Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6455 | **DATE** | June 24, 2002 |
| **CASE TITLE** | Patrick Cummings v Club Mediterranee, S.A., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 7/30/02, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Defendants' motions to dismiss for lack of personal jurisdiction are denied. Defendants are given to 7/22/02 to answer or otherwise plead to the complaint. A joint status report is due by 7/22/02.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | JUN 2 5 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 21 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS courtroom deputy's initials | | 02 JUN 25 PM 1:41 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**JUN 25 2002**

| | |
|---|---|
| PATRICK CUMMINGS and CAROL ANN LEE, Personal Representatives of the Estate of NORA CUMMINGS, deceased, <br><br> Plaintiffs, <br><br> v. <br><br> CLUB MEDITERRANEE, S.A., CLUB MED SALES, INC., HOLIDAY VILLAGE (PARADISE ISLAND) LIMITED, and CLUB MEDITERRANEE BAHAMAS, LIMITED, <br><br> Defendants. | No. 01 C 6455 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Patrick Cummings and Carol Ann Lee, as personal representatives for the estate of the deceased Nora Cummings ("Cummings"), filed a multi-count personal injury and wrongful death diversity action to recover damages allegedly suffered due to the negligence of defendants Club Mediterranee, S.A. ("CMSA"), Club Med Sales, Inc. ("CMSI"), Holiday Village (Paradise Island) Limited ("HVPI") and Club Mediterranee Bahamas Limited ("CMB"). Before the court are the fully briefed motions of CMSA, HVPI and CMB (collectively the "moving defendants") to dismiss for lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure Rule 12(b)(2). For the reasons set forth below, the moving defendants' motions are denied.

### Facts

CMB is a corporation organized under the laws of the Bahamas, having its principle place of business in the Bahamas. CMB operates the resort known as Paradise Island, where the accident that is the basis for this negligence action occurred. Paradise Island is owned by HVPI, a Bahamas



corporation with its principle place of business in the Bahamas. CMSA is a French corporation with its principal place of business in Paris, France. The moving defendants are related in the Club Med corporate chain, working from top to bottom of the corporate chain, as follows: CMSA owns Club Med, Inc., a Cayman Islands corporation; Club Med, Inc., wholly owns both CMB and Club Med Holding, N.V. ("Holding"); CMB wholly owns HVPI; Holding, a Netherlands Antilles Corporation, wholly owns Club Med Finance, B.V.; Club Med Finance B.V. wholly owns CMSI.

As testified by Eileen Kirsch, the vice president and general counsel for CMSI, during the relevant time period, CMSI was the exclusive seller and marketer of Club Med vacation packages in the United States for Club Med resorts located throughout the World. In fact, all vacation packages purchased by United States citizens to the Paradise Island resort owned by HVPI and operated by CMB were sold through CMSI. According to Ms. Kirsch, in order to market and sell vacation packages to the Club Med resorts, including the Paradise Island club, CMSI advertised in Illinois through "various media, [including] newspaper, radio, television and direct mail." CMSI also sent employees to Illinois to discuss billing arrangements with Illinois travel agents.

Cummings booked her trip through an Illinois travel agency and was issued a voucher by CMSI that was sent to Cummings at her residence in Chicago, Illinois. The "Vacation Contract" that was a "contract between CMSI and all persons who purchased Club Med vacation packages from CMSI" during the relevant time period, including Illinois residents, provided that CMSI was the "sales agent" for the Club Med vacation, but that the "Vacation is provided by Club Med., Inc, Club Mediterranee S.A. or certain of its subsidiaries or affiliates, in the case of a Club Med Vacation (the 'Operators')." Under the Heading "Governing Documents," the Vacation Contract further provides: "Your vacation is subject to all the all the terms, and conditions contained in this Club Med (Trident)

2

brochure governing the period of your Vacation or contained in any other written material published by the Operators and issued to you by the rules in force at each Club Med destination." Under the heading "Claims," the Vacation Contract provides: "Club Mediterranee S.A., Club Med, Inc., Club Med Sales, Inc. and their subsidiaries and affiliates reserve the right to withdraw, alter or otherwise modify rates, departure dates, village availabilities, tours, itineraries, specific programs, sports facilities or activities at any time and without notice ...."

## Legal Standards

Evaluating a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiffs bear the burden of establishing a prima facie case for personal jurisdiction. *See*, Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp. ("Reimer Express"), 230 F.3d 934, 939 (7th Cir. 2000); Steel Warehouse of Wisc. Inc. v. Leach, 154 F.3d 712, 714 (7th Cir. 1998). When determining personal jurisdiction over a defendant, the court can consider affidavits submitted by the parties, *see* Kontos v. U.S. Dept. of Labor, 826 F.2d 573, 576 (7th Cir. 1987), and "must accept all undenied factual allegations and resolve all factual disputes in favor of the party seeking to establish jurisdiction." Saylor v. Dyniewski, 836 F.2d 341, 342 (7th Cir. 1988).

The court has jurisdiction over a non-resident, non- consenting defendant in a diversity case if Illinois state courts would have jurisdiction. McIlwee v. ADM Industries, Inc., 17 F.3d 222, 223 (7th Cir.1994); RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272 (7th Cir.1997). "The Illinois long-arm statute permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitution." Reimer Express, 230 F.3d at 940, *citing*, 735 Ill. Comp. Stat. 5/2-209(c).

In order to comport with due process, however, a defendant "must have 'minimum contacts' with Illinois such that maintaining this lawsuit does not offend 'traditional notions of fair play and

3

substantial justice." FMC Corp. v. Varonos, 892 F.2d 1308, 1311 n. 5 (7th Cir.1990), *citing* International Shoe Co. v. Washington, 326 U.S. 310, 316 (U.S. 1945). Simply put, a defendant must have "purposefully availed" itself of the privilege of conducting activities within Illinois, such that it should *"reasonably anticipate* being hauled into court" here. Worldwide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (U.S. 1980) *(emphasis added)*.

## Discussion

The moving defendants generally base their entire motion to dismiss on the fact that the individual corporate defendants, other than CMSI, do not have any physical contacts with Illinois. This argument, however, is not the end of the jurisdictional inquiry. Personal jurisdiction can be determined based solely on acts done "through an agent" under the Illinois long-arm statute, and attributing acts of an agent to the principal "comports with due process notions of fairness." Master Tech Products, Inc. v. Smith, 181 F.Supp.2d 910, 913 (N.D. Ill. 2002), *citing*, 735 ILCS 5/2-209(a); Wisconsin Elec. Mfg. Co., Inc. v. Pennant Prods., Inc., 619 F.2d 676, 677 (7th Cir.1980) (holding that "visits by the buyers' agents to [the forum] in connection with the business on which the claim is based" were sufficient minimum contacts to satisfy due process); Madison Consulting Group. v. South Carolina, 752 F.2d 1193, 1200-01 (7th Cir.1985) (same).

The issue before this court is whether CMSI acted as an agent for CMSA, HVPI and CMB when it advertised and sent employees and invoices to Illinois to advertise and book vacations. In personal injury actions arising from accidents at Club Med resorts, federal district courts from other jurisdictions have held that pursuant to CMSI's acts of advertising and marketing to residents of the forum state with brochures that included the above cited language from the Vacation Contract, CMSA and Club Med Inc. had sufficient contacts with the forum states to establish the form court's

personal jurisdiction over the parties. Pavia v. Club Med, Inc., No. CIVA3:97CV808, 1998 WL 229912 at *3-4 (D.Conn. 1998); Sankaran v. Club Mediterranee, S.A., No. 97 Civ. 8318, 1998 WL 433780 at *4 (N.D.N.Y. July 31, 1998).

In Sankaran, the plaintiff was injured at Club Med Guadeloupe. Similar to the instant action, the plaintiff sued, among others, CMSA and the corporate subsidiary that owned the Guadeloupe facility. Based on the same factors listed above regarding CSMI's exclusive role in marketing and booking vacations for United States customers, the Sankaran court held that CMSI acted as an agent for all of the corporate chain and that finding personal jurisdiction over all the defendants comported with due process. Sankaran, 1998 WL 433780 at *4 ("Defendants' activities through their agents also suffice to show that they have established the requisite contacts with New York and have purposefully availed themselves of its laws, satisfying the due process requirements inherent in any such inquiry").

Judge Nordberg's decision in Spinozzi v. ITT Sheraton Corp., 1994 WL 559110 (N.D. Ill. Oct. 6, 1994), applying both the Illinois long-arm statute and a constitutional due process analysis to considering personal jurisdiction over a member of a corporate chain, is equally applicable and compelling. In Spinozzi, the plaintiffs sued the defendants for personal injuries arising from the alleged negligence of the defendants in the maintenance of a resort in Acapulco, Mexico. The plaintiffs sued, among others, the corporate subsidiaries that owned and operated the resort, and the ultimate parent corporation, ITT Sheraton Corporation ("ITT Sheraton"). One step down the ladder from ITT Sheraton at that time was the defendant ITT Sheraton International, Inc ("Sheraton International"). Sheraton International owned the subsidiary that in turn owned 49% of the subsidiary that operated the resort at which the plaintiff was injured.

5

Like the moving defendants in the instant case, Sheraton International argued that because it was not an Illinois corporation, had no offices, employees, owned no property and had no registered agent in Illinois, an Illinois federal court lacked personal jurisdiction over it. In response, the plaintiffs argued that because Sheraton International was a "mere department" of ITT Sheraton, which had already submitted to the court's jurisdiction, the court had jurisdiction over Sheraton International. Holding "mere formal separation is enough to maintain separate corporate existences," the court found insufficient facts to pierce the corporate veil, and held Sheraton International was not amenable to suit in Illinois merely because ITT Sheraton submitted to jurisdiction. Spinozzi, 1994 WL 559110 at *3-4.

The Spinozzi court next addressed whether ITT Sheraton was acting as Sheraton International's agent when it advertised Sheraton resorts in Illinois. Holding in the affirmative, the court reasoned (Id. at *3-4):

> Plaintiff's argue that ITT Sheraton is International's agent for the purpose of marketing and advertising International's hotels. According to David Rich, Vice President of ITT Sheraton, ITT Sheraton promotes the Sheraton name and Sheraton hotels "as a system." This means that ITT Sheraton does not advertise for any specific hotels, but promotes Sheraton generally. Plaintiffs argue that these advertisements benefit International, as International's hotels bear the Sheraton name and logo. Furthermore, Plaintiffs point out that the phone number included in ITT Sheraton's advertisement of the Sheraton "system" is that of Sheraton Reservations Corp., a wholly owned subsidiary of ITT Sheraton. Plaintiffs also allege that ETI, the owner of the Resort where Plaintiff was allegedly injured, was, at the time of the alleged injury, party to a reservation agreement with Sheraton Reservations Corp. Therefore, Plaintiffs argue, International, which licensed the hotel to ETI, derived a direct benefit from the advertising performed by ITT Sheraton.
>
> *Defendant argues that Plaintiffs have provided no evidence that ITT Sheraton advertises on behalf of International in Illinois. The Court finds that general advertisements of the Sheraton "system" are, in part, advertisements for International and its hotels. The advertisement of a name and logo must be considered advertisements for the products which carry that same name and logo.*

> *Furthermore, International was surely aware that ITT Sheraton was advertising its name and logo.* The brochure that Plaintiffs allege is distributed in the Chicago area states, "Sheraton Acapulco Resort is one of nearly 500 ITT Sheraton hotels ... in more than 65 countries throughout the world." This is clearly an advertisement for International's Resort, even if it is under the auspices of ITT Sheraton. ITT Sheraton is therefore, for the purpose of this motion, considered the agent of International. *[Emphasis Added.]*

The Spinozzi court considered whether advertising a product in a state, alone, is sufficient to create the minimum contacts necessary to sustain jurisdiction. Finding that such contacts, when performed on behalf of vacation destinations, are sufficient to meet the requirements of the Illinois long-arm statute and state and federal due process, the court held (Id. at *5-6):

> The solicitation of business in Illinois is obviously completed with the intent of convincing Illinois consumers to purchase the advertised product. When ITT Sheraton caused the brochure advertising International's Acapulco Resort to appear in Illinois, it intended Illinois consumers, like the Plaintiffs, to make reservations at that resort. Therefore, International, the beneficiary of the marketing performed by ITT Sheraton, should have anticipated being haled into an Illinois court.
>
> In Gavigan v. Walt Disney World, Inc., 646 F.Supp. 786 (E.D.Pa.1986), the court was confronted with a similar problem. There, plaintiffs, Pennsylvania residents, sued the defendant in Pennsylvania, alleging that the defendant caused personal injuries at the Defendant's vacation complex in Florida. The court based jurisdiction on the defendant's ongoing promotional campaign in the Philadelphia area. The Gavigan court also noted that the fact that one of the defendant's sister corporations paid for the advertisement, the product advertised was clearly the defendant's.
>
> This Court agrees with the Gavigan court that the in state advertisement of out of state vacation destinations are enough to subject the operators of the out of state business to jurisdiction in the state where the advertisement appeared. There is no sense of unfair surprise to the Defendant, who targeted Illinois residents through advertising in Illinois. It is within "traditional notions of fundamental fairness and substantial justice" to force International to answer Plaintiff's complaint in Illinois because International, through its corporate parent, ITT Sheraton, advertised its products in Illinois with the purpose of attracting Illinois residents to its Acapulco Resort.

C. Illinois Due Process

The Illinois Constitution, independently of the federal constitution, also guarantees due process to all persons. An Illinois Court may exercise jurisdiction over a defendant only when it is fair, just, and reasonable to require a non-resident to defend an action in Illinois. Interpretations of the federal guarantee of due process are instructive in considering the Illinois guarantee. Id. In light of the facts discussed above, the Court finds that its exercise of jurisdiction over International in this case also complies with the Illinois due process standard. [*Citations omitted.*]

In the instant case, based on the facts and case law as set forth above, the court holds that CMSI, as the sole marketing agent for the United States, was acting as the moving defendants' agent when it placed media advertising in Illinois, sent invoices to Cummings and other Illinois residents, and traveled to Illinois to meet with Illinois travel agents. Accordingly, based on the case law above, the court holds that plaintiffs have met their burden in stating a prima facie case of personal jurisdiction over all defendants. As in Spinozzi, the moving defendants derive benefits from CMSI's marketing activities in Illinois, and as other courts directly addressing personal jurisdiction over Club Med affiliates have noted, the documents distributed by CMSI specifically reference the Club Med affiliates and the fact that the Vacation Contract incorporates CMSA and all of its affiliates and subsidiaries' rights. Further, while the moving defendants make much of the fact that plaintiffs have not alleged that Cummings relied on CMSI's advertising in choosing to come to the Paradise Island resort, neither the Pavia nor the Spinozzi courts relied on this issue in finding that the marketing agent, and the corporate parties deriving benefits from such agent, were subject to the personal jurisdiction of the forum state under a due process analysis.

## CONCLUSION

Based on the foregoing, the court denies defendants' motions to dismiss for lack of personal jurisdiction and orders defendants to answer or otherwise plead to the complaint on or before

8

July 22, 2002. The parties are directed to file a Joint Status Report (conforming to the court's standing order) on or before the above date, and to appear for a status conference on July 30, 2002, at 9:00 a.m.

**ENTER:** **June 24, 2002**

　　　　　　　　　　　　　　　　　　　　　　　　_/s/ Robert W. Gettleman_
**Robert W. Gettleman**
**United States District Judge**